ACCEPTED
01-15-00188-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/26/2015 4:05:35 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00188-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/26/2015 4:05:35 PM

CHRISTOPHER A. PRINE
Clerk

**MARK F. HANKS,**

*Appellant,*

v.

**THE HUNTINGTON NATIONAL BANK,**

*Appellee.*

On Appeal from the County Civil Court at Law No. 4 of Harris County, Texas
Trial Court Cause No. 1056196

**FIRST MOTION FOR EXTENSION OF TIME
TO FILE APPELLANT'S BRIEF**

LAW OFFICE OF ROBERT C. PASCHAL, JR.
Robert C. Paschal, Jr
State Bar No. 00786156
12850 Jones Rd., Suite 201
Houston, Texas 77070
Telephone: (713) 882-1863
Facsimile: (281) 970-1664

Attorney for Defendant and Appellant Mark F. Hanks

1

TO THE HONORABLE FIRST COURT OF APPEALS:

Pursuant to Rules 10.1., 10.5(b), and 38.6 (d) of Texas Rules of Appellate Procedure, Appellant Mark F. Hanks ("Appellant" or "Mr. Hanks") submits this First Motion for Extension of Time to File Appellant's Brief, and in support hereof would respectfully show as follows:

On May 28, 2015, the Clerk of this Court sent an email to counsel for the parties advising that the reporter's record was filed with this Court on May 27, 2015. Thereafter, on May 29, 2015, the Clerk of this Court sent an email to Appellant's counsel stating that the certified clerk's record was filed on May 28, 2015. Accordingly, Appellant's opening brief is currently due on **June 29, 2015.**

Counsel for Appellant hereby requests a 30-day extension of time to file Appellant's brief, making the brief due on **July 29, 2015.** This is the first request for an extension of time to file the opening brief.

Counsel for Appellant relies on the following reasons, in addition to the routine matters that counsel must attend to in daily practice, to explain the need for the requested extension:

Counsel for Appellant, a solo practitioner, has been heavily involved this past month in a number of cases for which he has primary responsibility, and which have required a substantial amount of time to attend a variety of hearings, discovery matters, client meetings, filings of new litigation, and even a substantial mediation that resulted in a case being settled

prior to a lawsuit even being filed. In short, Appellant's counsel has not had sufficient time to review the clerk's and reporter's records, or to research and prepare a brief.

Appellant's counsel is therefore requesting additional time to familiarize himself with the record and all of the legal issues in the case, which, as noted below, are rather unique in nature. Further, in addition to having an extremely full docket between May 29 and the present date, Appellant's counsel's fifth wedding anniversary was June 1, 2015, and counsel's wife surprised him with a week-long anniversary vacation outside of Texas that she had planned and bought non-refundable air fare for – making an already short time period even shorter, and more hectic. Lastly, another valuable day's worth of time was lost when Appellant's counsel, after having had his Discover Card stolen without his knowledge (and subsequently more than $15,000.00 in charges run up on that account), had to deal with fraud investigators and the Houston Police Department.

Regarding the legal issues and the need for more time to fully research and brief them, although this case was filed as what on its face might appear to be a fairly simple forcible detainer action, the legal issues to be raised on this appeal are somewhat complex.

Specifically, Appellee Huntington National Bank foreclosed on Appellant's residence and purchased the subject property on September 3, 2013. The Appellee's purchase price of **$415,890.31** was well below the appraised value of the home (**$647,425.00** on January 1, 3013, and **$675,898** on January 1, 2014), and was "grossly inadequate" as that term is defined under Texas Law.

3

Despite purchasing the property in September 2013 at a huge discount from the real value of the property, Appellee made no effort for more than a year to send Appellant any notice to vacate the premises.

During the year that transpired after the non-judicial foreclosure sale, Appellee was aware of, allowed, and benefitted from Appellant's occupancy of the residence. An employee of Appellee went so far as to state to Appellant that Appellee "definitely benefitted" from having Appellant reside in the home, noting that his occupancy had resulted in a significant economic benefit to Appellee. At the trial of this matter, the facts related to the benefits received by Appellee from Appellant were excluded by the trial court judge from consideration at trial (for example, Appellant made, at his own expense, plumbing repairs, and repaired other leaks, that would have caused tens of thousands in damages to the property had Appellant not been there to discover and repair them; Appellant also paid the utilities, and paid for the lawn and pool to be kept up). Further, the facts supporting that the parties had, through their conduct, entered into a quid pro quo agreement, were excluded.

The trial court judge refused to consider any argument, or allow any evidence in support thereof, that Appellant was not a mere tenant at sufferance, but rather – as a result of the parties' respective post-foreclosure sale conduct – that an implied-in-fact agreement existed between the parties. Specifically, Appellant, in return for the benefits he provided to Appellee, could reside in the home – not as any hold-over tenant or tenant at sufferance -- but rather as a tenant with an implied-in-fact lease.

4

At trial, Appellant attempted to assert that he and the Bank had entered into such an implied-in-fact contract (a lease in this instance) after the foreclosure sale – and prior to the notice to vacate being sent – such that Appellant was entitled to protections under the Protecting Tenants at Foreclosure Act of 2009, particularly the 90-day notice to vacate after foreclosure provision. Just as if Appellee had solicited any other third person off the street and had them occupy and keep up the premises, in return for free room and board, Appellant, despite having been the borrower under the deed of trust, was entitled to a full ninety (90) days notice to vacate, which he did not receive. In other words, the parties transformed Appellant through their respective conduct from originally being a potential tenant at sufferance to being a tenant with an implied-in-fact lease.

The trial court judge refused to consider this argument, or allow any evidence to support this theory, and further refused Appellant the opportunity to make an offer of proof as to the evidence of the clear implied-in-fact real property lease that existed between the parties. Without delving any further into the arguments on the merits, it is clear that the issues raised, both substantive and evidentiary, are not "garden variety" or commonly litigated in the State of Texas, and that the research for Appellant's brief will be relying on cases from several jurisdictions outside of Texas, where courts have had more opportunities to address the application of the Protecting Tenants at Foreclosure Act of 2009.

Further, substantial briefing of Texas law on the issues related to implied-in-fact contracts and the recognition thereof as valid in a real property lease situation will have to

5

be conducted, as well. Lastly, the trial court judge's refusal to even allow an offer of proof on the issues related to whether proper notice to vacate was given by Appellee, as well as the exclusion of the actual evidence, will also have to be briefed.

This is the first request for extension of time to file the opening brief.

On June 24, 2015, Appellant's counsel attempted to confer via telephone with opposing counsel, both lead counsel in Dallas and local counsel in Houston, regarding the extension being sought, and neither attorney has returned Appellant's counsel's calls with respect to whether they agree or oppose this motion as of the time it was e-filed with this Court on June 26, 2014.

All facts recited in this motion are within the personal knowledge of the counsel signing this motion, therefore no verification is necessary under Rule of Appellate Procedure 10.2.

## PRAYER FOR RELIEF

For the reasons set forth above, Appellant requests that this Court grant this First Motion to Extend Time to File Appellant'S Brief and extend the Deadline for Filing the Appellant'S Brief up to and including **July 29, 2015.** Appellant further requests all other relief to which he may be entitled.

Respectfully submitted,

LAW OFFICE OF ROBERT C. PASCHAL, JR.

By: _____

Robert C. Paschal, Jr.
State Bar No. 00786156
12850 Jones Rd., Suite 201
Houston, Texas 77070
Telephone: (713) 822-1863
Facsimile: (281) 970-1664

Attorney for Appellant Mark F. Hanks

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 24, 2015, I attempted to confer with Joseph M. Vacek, counsel for Appellee, and Rex Kesler, local counsel for Appellee, regarding this motion and the relief requested in said motion, and neither counsel for Appellee has returned my calls with respect to whether they agree to or oppose the motion as of the time it was e-filed with this Court on June 26, 2015.

_____

Robert C. Paschal, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2015, a true and correct copy of the foregoing document was served by facsimile transmission to the following counsel of record:

Joseph M. Vacek                                    **Via Facsimile No. (972) 341-0675**
Barrett Daffin Frappier Turner & Engel, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001

Rex L. Kesler                                      **Via Facsimile No. (281) 501-3191**
2311 Canal Street, Suite 304
Houston, Texas 77069

_____

Robert C. Paschal, Jr.

7